United States Court of Appeals,

Eleventh Circuit.

No. 95-6324.

Frederick B. BENSON, Frank D. Dollar, Robert J. Brown, Rolan Archambault, Plaintiffs-Appellants,

v.

TOCCO, INC., a wholly-owned subsidiary of Park Ohio Industries, Inc., Park Ohio Industries, Inc., Defendants-Appellees.

June 2, 1997.

Appeal from the United States District Court for the Northern District of Alabama. (No. CV-93-N-1816-M), Edwin L. Nelson, Judge.

Before BIRCH and CARNES, Circuit Judges, and MICHAEL[*], Senior District Judge.

BIRCH, Circuit Judge:

In this employment discrimination action filed pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621-34 ("ADEA"), Frederick Benson, Frank Dollar, Robert Brown, and Rolan Archambault each contend that the defendants, Tocco, Inc. and Park Ohio Industries, Inc. (hereinafter "Tocco") discharged them due to their age during a company-wide reduction-in-force. The district court granted summary judgment in favor of Tocco. Benson, Dollar, Brown, and Archambault appeal that order. For the reasons that follow, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

I. BACKGROUND

Tocco manufactures induction hardening and heating equipment. At the time the events giving rise to this action transpired, Archambault, Dollar, and Brown were mechanical designers in Tocco's engineering departments; Benson served as Tocco's human resources manager. In 1992, Tocco instituted a reduction-in-force ("RIF") for what Tocco contends were purely economic reasons; the appellants submit that Tocco rehired as many employees as it fired during the RIF, and that Tocco's true motivations for the terminations were discriminatory.

---

[*]Honorable James H. Michael, Senior U.S. District Judge for the Western District of Virginia, sitting by designation.

Dennis Liederbach, the president of Tocco, selected the employees to be terminated. According to Tocco, Archambault was selected as part of the RIF because his design methods were overly-detailed, slow, and not sufficiently productive. Tocco also suggests that Archambault's position, requiring expertise in water recirculation systems, was eliminated entirely; to the extent that Tocco still needed to have work involving the design of water recirculation systems performed, Tocco contends that it contracted this work to outside vendors. At the time of his termination, Archambault was informed that the decision to fire him was unrelated to his performance in his job. Dollar was employed by Tocco as a mechanical engineer and was primarily involved in mechanical machine design. At the time of the RIF, Tocco was attempting to institute the wide-spread use of a new computer-automated-design program, Pro-Engineer ("Pro-E"). Tocco submits that Dollar was targeted for reduction due to his resistance to adapt to and become proficient in Pro-E. Tocco also maintains that it had decided to shift the function of the engineers in Dollar's department away from machine design and toward inductor coil design, for which Dollar allegedly was not suited. Dollar contends that the majority of Tocco employees subsequent to the RIF were not yet proficient in Pro-E and that Tocco focused its Pro-E training efforts on younger employees. Although Dollar concedes that he missed several Pro-E training classes, he suggests that he deliberately was called away from these classes to keep the work "flowing" while younger employees were permitted to become versed in computer automated design systems.

Tocco maintains that Brown also was terminated due to his persistence in drafting manually and his concomitant failure to integrate into his work computer-aided design. Brown notes that he did take several courses in computer automated design but that, unlike younger employees, he was not given an opportunity to perform day-to-day work on the computer. The parties dispute both the extent to which Brown sought greater access to the computer and whether the work to which Brown was assigned at that time was best accomplished using a computer. Benson managed Tocco's Human Resources Department, assisted by an administrative assistant, prior to his termination. According to Tocco, the decision to terminate Benson was motivated by a desire to restructure the Human Resources Department and consolidate the administrative aspects of Benson's position with

the clerical functions performed by his assistant. Tocco advertised regionally for a personnel manager several months before Benson was fired. Clerical skills were not stated as a requirement of the job. Benson officially was terminated by Sterling Parks, a Park Ohio manager. At the time of his termination, Benson was informed that he was chosen to be included in the RIF strictly for economic reasons and not due to any deficiencies on his part. Benson inquired whether (1) Tocco had taken any steps to find him another position at either Tocco or Park Ohio and (2) Tocco had considered maintaining him at a reduced salary. Parks responded in the negative to both inquiries. Benson subsequently communicated in writing his concern to Tocco's legal counsel, Hal Madorsky, that his termination was related to his age. According to Benson, Tocco shortly thereafter modified the wording of its advertisement regarding the Human Resources Department from a position entitled "Personnel Manager," Benson's title, to "Personnel Supervisor." Tocco hired Joan Kanner several months after Benson's termination; Kanner had both administrative and clerical experience.

Kanner resigned the position after three months. Tocco readvertised the position and Benson applied for the job. Liederbach responded to Benson that clerical skills were required and asked that Benson update Tocco as to his abilities in this regard. Benson contends that he perceived Liederbach's letter to be an attempt to communicate that Benson would not be considered for the position and, consequently, recommended his former administrative assistant. Tocco ultimately hired Andy Huddleston as Personnel Supervisor approximately eight months after Benson's termination. Huddleston possessed approximately the same typing skills as Benson and required computer training at the start of his employment with Tocco.

The district court found that Archambault, Dollar, and Brown were able to demonstrate that they were qualified for another available position at the time of termination but, in response to Tocco's articulation of a legitimate, non-discriminatory justification for the terminations, failed to establish that Tocco's stated reasons were pretextual. The court further determined that Benson had failed to establish a prima facie case. Accordingly, the court granted summary judgment in favor

of the defendants.[1]

## II. DISCUSSION

We review *de novo* the district court's order granting summary judgment. *See Earley v. Champion Int'l. Corp.,* 907 F.2d 1077, 1080 (11th Cir.1990). Summary judgment is appropriate where there is no genuine issue of material fact. Fed.R.Civ.P. 56(c). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citation omitted). On a motion for summary judgment, we must review the record, and all its inferences, in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).

In an employment discrimination case, the plaintiff must produce sufficient evidence to support an inference that the defendant-employer based its employment decision on an illegal criterion. *See Alphin v. Sears Roebuck & Co.,* 940 F.2d 1497, 1500 (11th Cir.1991) (citing *Halsell v. Kimberly-Clark Corp.,* 683 F.2d 285, 290 (8th Cir.1982), *cert. denied,* 459 U.S. 1205, 103 S.Ct. 1194, 75 L.Ed.2d 438 (1983)). At the summary judgment stage, our inquiry is whether an ordinary person could reasonably infer discrimination if the facts presented remained unrebutted. *Id.* (quoting *Carter v. City of Miami,* 870 F.2d 578, 583 (11th Cir.1989)). Once a plaintiff has established a prima facie case and has put on sufficient evidence to allow a factfinder to disbelieve an employer's proffered explanation for its actions, that alone is enough to preclude entry of judgment as a matter of law. *Combs v. Plantation Patterns,* 106 F.3d 1519, 1532 (11th Cir.1997). Stated differently, a plaintiff is entitled to survive summary judgment "if there is sufficient evidence to demonstrate the existence of a genuine issue of fact as to the truth of each of the employer's proffered reasons for its challenged action." *Id.* at 1529.

---

[1]Because the court granted summary judgment in favor of the defendants as to each plaintiff, it did not address the defendants' contention that Park Ohio was not an "employer" under the ADEA and, therefore, not a proper party to this action. The appellants do not address this issue in their brief but reserve the right to argue in favor of Park Ohio's inclusion in the case before the district court on remand. Because we reverse in part the district court's decision, we remand for the court's consideration the question of whether Park Ohio is, for purposes of the ADEA, an "employer" subject to liability under the facts of this case.

This circuit has adopted a variation of the test articulated by the Supreme Court for Title VII claims in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), for cases arising under the ADEA. *See Mitchell v. Worldwide Underwriters Ins. Co.,* 967 F.2d 565, 566 (11th Cir.1992). In order to make out a prima facie case for an ADEA violation, the plaintiff must show that he (1) was a member of the protected age group, (2) was subject to adverse employment action, (3) was qualified to do the job, *see Verbraeken v. Westinghouse Elec. Corp.,* 881 F.2d 1041, 1045 (11th Cir.1989), *cert. dismissed,* 493 U.S. 1064, 110 S.Ct. 884, 107 L.Ed.2d 1012 (1990), and (4) was replaced by a younger individual. *See O'Connor v. Consolidated Coin Caterers Corp.,* --- U.S. ----, ----, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433 (1996). These criteria are altered slightly in both an RIF case and where a position is eliminated in its entirety; in these instances, the plaintiff establishes a *prima facie* case by demonstrating (1) that he was in a protected age group and was adversely affected by an employment decision[2], (2) that he was qualified for his current position or to assume another position at the time of discharge, and (3) evidence by which a fact finder reasonably could conclude that the employer intended to discriminate on the basis of age in reaching that decision. *See Mitchell,* 967 F.2d at 567-68; *Earley,* 907 F.2d at 1082; *Verbraeken,* 881 F.2d at 1045-46.

1. Motion to Strike

The appellants contend that the district court abused its discretion in striking from the record an affidavit by Dr. James Long, a labor economist, setting forth the statistical significance of the ages of those chosen by Tocco to be included in the RIF. We review a district court's rulings regarding discovery for abuse of discretion. *Fund for Animals, Inc. v. Rice,* 85 F.3d 535, 542 (11th Cir.1996). According to the appellants, their initial, good-faith response to the defendants' request for information relating to experts was that they had not yet decided whether to use an expert. On November 15, 1994, thirty days before the close of discovery, the appellants requested certain information concerning the ages of Tocco employees at the time of the RIF. Defense counsel

---

[2]It is undisputed that each of the appellants was within the protected age group at the time of termination.

informally objected to the request. At a subsequent meeting held to resolve the dispute, plaintiffs' counsel advised that he required this information to evaluate the need for an expert witness. The defendants apparently agreed to produce the requested discovery but did not do so until February 6, 1995, almost two months subsequent to this meeting and two weeks after they had filed a motion for summary judgment. During the intervening two months, plaintiffs' counsel had notified defense counsel of the expert he planned to use and of the continued need to receive and evaluate the requested material. On February 18, 1995, plaintiffs' counsel forwarded to defense counsel the pertinent expert affidavit. The affidavit established various statistical correlations between the pattern of terminations at Tocco during the RIF and the ages of terminated employees.[3] Tocco moved to strike the affidavit on the ground that the plaintiffs' delay was prejudicial; the court granted the motion.

Tocco does not dispute this chronology of events but insists that the appellants failed to disclose their expert in a timely fashion and, thus, the district court's ruling was appropriate. Both parties cite *Hancock v. Hobbs,* 967 F.2d 462 (11th Cir.1992), in support of their respective positions in relation to the district court's discovery ruling. In *Hancock,* the plaintiff informed the defendant at the beginning of discovery that she had not yet decided what expert she would retain for trial; in truth, the plaintiff had already retained an expert, a fact she did not reveal until five months after the request for expert disclosure had been made and three months after the close of discovery. Under those circumstances, we held that the district court's exclusion of this expert testimony did not constitute an abuse of discretion. *See id.* at 468.

The circumstances presented here are markedly different from those in *Hancock.* Fed.R.Civ.P. 26(e)(1) states that "a party is under a duty seasonably to amend a prior response to an interrogatory, request for production, or request for admission if ... corrective information has not otherwise been made known to the other parties during the discovery process...." The undisputed procedural history of this case indicates that the plaintiffs diligently and truthfully informed Tocco

---

[3]For example, Dr. Long found statistical significance in the fact that, of fourteen employees terminated during the RIF, all but three were over forty years old.

as to the necessity for certain information in order to evaluate the need for expert testimony. The plaintiffs expressly identified the name of the proposed expert and explained that the need for information was related directly to the use of an expert. R2-32 at Exh. E. Tocco thus was on notice as to the plaintiffs' intention to call an expert pending the evaluation of certain information that Tocco had delayed in producing. It is difficult to discern how, after Tocco finally submitted the requested documentation, it was prejudiced by the plaintiffs' prompt delivery of the promised expert affidavit. We do not see this case as analogous to *Hancock,* in which the plaintiff deliberately concealed the fact that an expert had been retained and submitted the expert testimony months after the close of the discovery. We see neither subterfuge nor deliberate delay attributable to the plaintiffs. To the extent the submission of the expert affidavit was delayed past the close of discovery, this delay was caused in large part by Tocco's conduct. We conclude that the district court abused its discretion in striking from the record Dr. Long's affidavit.

Tocco also suggests that even if we were to find the district court's exclusion of Dr. Long's affidavit to have been in error, such error is rendered harmless by the scant value of the expert testimony. We disagree. In his affidavit, Dr. Long testified that the rate of termination for Tocco employees over forty years old during the RIF was five times as large as the termination rate for employees under forty; the standard deviation was calculated to be 3.04 with a 0.002 probability. Similarly, employees over fifty years old were terminated at three times the rate of those under fifty, with a standard deviation of 2.66 and a probability of 0.008. *See* R2-32 at Exh. G. We have held that a standard deviation of two or three is enough to support an inference of discrimination. *Maddow v. Procter & Gamble Co.,* 107 F.3d 846, 852 (11th Cir.1997) (citing *Kilgo v. Bowman Transp., Inc.,* 789 F.2d 859, 871 n. 18 (11th Cir.1986)). We view the evidence submitted by the appellants regarding the rate of termination of older employees to be statistically significant and, accordingly, consider it, where relevant, in tandem with the other evidence adduced in the record.

2. Archambault

As noted by the district court, Archambault presented evidence to show that he was at least qualified for an available position at the time of the RIF. Several weeks after Archambault was

terminated, Tocco advertised for a mechanical engineer. Significantly, the advertisement described "a minimum of two years" of Pro-E experience as "ideal" but not required. R1-23-19. Indeed, at the time of Archambault's termination, most Tocco engineers had not yet accumulated two years of Pro-E experience and Archambault had recently completed a Pro-E training course. Archambault thus satisfied his burden of establishing that he was qualified for another job available at Tocco at the time he was fired.

We disagree with the court's determination, however, that Archambault failed to present evidence sufficient to raise an inference that Tocco's proffered justification for Archambault's discharge was a pretext for age discrimination.[4] Tocco contends that the decision to terminate Archambault was based on the fact that Archambault was overly meticulous in his work and inefficient in his use of time with respect to each project. The record does indicate that Archambault had been made aware that at least one supervisor, Dale Bradford, considered the amount of time he allocated to many tasks to be excessive. R1-18-12 at 75. The record further shows, however, that Archambault expressly was informed at the time of his termination that the decision to include him in the RIF was not a reflection of his capabilities or work. R1-23-1 at 119. The record further reveals that notwithstanding Bradford's possible dissatisfaction with Archambault's use of time, other supervisors considered him to be dependable and his attention to detail to save time once the product got "to the floor" because it did not need to be rechecked or reworked. R1-23-7 at 38, 49. The record also shows that the other designers retained in Archambault's engineering section were considerably younger and less experienced than he was. Drawing all inferences from the record in the light most favorable to Archambault in tandem with the statistical evidence referenced earlier, we conclude that there exists conflicting evidence with respect to Tocco's intent in firing Archambault such that a reasonable fact finder could disbelieve Tocco's stated reason for terminating

---

[4]In analyzing Archambault's discrimination claim, the district court apparently conflated the third element of plaintiff's prima facie case—evidence by which a factfinder might infer that the employer intended to discriminate on the basis of age—with the showing of pretext necessary to rebut the employer's articulation of a legitimate, non-discriminatory reason for the termination. In so doing, the court found that Archambault had failed to demonstrate pretext. We treat the court's decision as a finding that Archambault established a prima facie case but failed to overcome Tocco's proffer of legitimate justifications for the termination decision.

his employment. *See Combs,* 106 F.3d at 1529. A jury question therefore exists as to whether Tocco's proffered reasons for terminating Archambault were pretextual. The district court erred in granting summary judgment on this claim.

3. Dollar

We leave undisturbed the district court's determination that Dollar set forth a prima facie case of age discrimination because he was qualified for a position advertised shortly before the RIF for which Tocco retained a younger employee. Tocco contends that it chose to include Dollar in the RIF due to his refusal to learn Pro-E. Dollar submits that he did attempt to become Pro-E proficient but that Tocco deliberately prevented him from developing the necessary computer skills. In support of this proposition, he notes that he was called away from training sessions and was not given a computer on his desk. He also suggests that younger employees were permitted to take the initial Pro-E classes, thereby giving them an advantage in avoiding termination, and that even subsequent to the RIF Tocco, by its own admission, needed a computer-training specialist to assist employees with computer-aided design.

Although the record confirms Dollar's allegation that not all Tocco engineers and designers were Pro-E proficient after the RIF occurred, he has not presented evidence to demonstrate that Tocco's stated reason for his termination was a pretext for age discrimination. Notwithstanding Dollar's contention that it was Tocco's conduct that prevented him from gaining the requisite expertise in the use of a computer, his own testimony strongly suggests that he was not interested in moving from manual drafting to computer-aided design techniques. In his deposition, for instance, Dollar testified that he did not attend all the Pro-E classes in part because he was "called out" and in part because "I was rather displeased with being in there in the first place.... I felt that I was wasting time really.... I didn't feel like Pro-Engineering was benefitting the company or myself whatsoever." R1-18-11 at 51-52. Dollar conceded that he was given a subsequent opportunity to take more Pro-E classes but that he "preferred not to." R1-18-11 at 58. One of Dollar's supervisors, Dale Bradford, further testified that Dollar had "refused" to learn Pro-E and had stated that Pro-E was "going to be the death of the company and [Dollar] did not want to learn it."

R1-18-12 at 46. Karels also testified that he had made Dollar aware that Tocco intended to integrate Pro-E into the company. *Id.* Indeed, none of the appellants disputes the fact that Tocco's supervisory personnel had communicated the desire for the engineering staff to move toward the use of Pro-E as a future goal. Even drawing all inferences in favor of Dollar, Dollar has not presented sufficient evidence to permit a reasonable fact finder to disbelieve Tocco's justification for his termination. Stated differently, Dollar has not shown that Tocco's explanation for including him in the RIF was fabricated as a pretext for discrimination on the basis of age. We therefore affirm the district court's summary judgment in favor of Tocco as to Dollar.

4. Brown

Brown also set forth sufficient evidence to establish that he was qualified for an available position for which Tocco hired a younger individual at the time of the RIF. Tocco contends, as it did in Dollar's case, that it targeted Brown for termination because he persisted in drawing designs by hand and refused to be trained in Pro-E. Brown submits that he expressed an interest in gaining proficiency in computer-assisted design work but that he was not given regular access to a computer. He further suggests that Tocco's proffered reason for terminating his employment is pretextual.

The record contains evidence tending to show that Brown was asked by his supervisor to adapt to the computer but that Brown believed he could accomplish a given task "faster on the board." R1-23-10 at 24. There is also evidence that Brown declined to take a Pro-E course for which he had been scheduled. R1-23-3 at 44-45. The record also shows, however, that Brown took three courses in computer-assisted design during his tenure at Tocco and, notwithstanding his request to spend time on the computer in order to become more proficient, was given neither a computer at his desk nor regular access to any of the computers used by other employees in his department. R1-23-3 at 16, 39-41. Brown testified that his supervisor, Sam Karels, expressed an interest in giving Brown an opportunity to gain experience on the computer but that "[t]here was more interest in getting the job out than me getting computer time" and "it come down to he wanted the job out first." *Id.* at 40. Brown also testified that most other people in his office were given greater access to a computer and stated that "[i]f there was a computer, it was at someone's work

station.... In order to use that computer, I'd have to get that person to, you know, go away or something." *Id.* at 41. We conclude that there exists an arguable basis of evidence sufficient to permit a reasonable factfinder to conclude that the reasons offered by Tocco to justify Brown's termination were not the real reasons for his inclusion in the RIF. As such, the ultimate determination as to whether the true motivation for Brown's termination was discriminatory in nature is a jury question. Accordingly, we reverse the district court's judgment as to Brown.

5. Benson

Tocco submits that Benson was terminated because Tocco decided, for economic reasons, to consolidate his position with that of his administrative assistant; in essence, Tocco suggests that Benson's job was eliminated entirely and a new job created that required both administrative and clerical skills. Benson responds that his position was never eliminated and the alleged "restructuring" of the job was a pretext for discrimination; alternatively, Benson states that he was qualified for the new position.

It is undisputed that Benson explicitly asked whether Tocco had considered him for any other available position at Tocco or Park Ohio, or had considered maintaining him at a lower salary. It is further undisputed that Tocco did not indicate to Benson, at the time of termination, that his inclusion in the RIF was performance-related. The record reveals that Tocco advertised for a personnel manager shortly before Benson was terminated. The advertisement described the job Benson had held and sought an individual who could perform substantially the same tasks Benson then performed, with the exception of requiring "computer capabilities." R1-23-24. Tocco asserts that Benson was not qualified for this job because he had demonstrated no clerical or computer-related skills. Tocco offers no evidence tending to show, however, that there was ever any determination regarding Benson's clerical or computer capabilities. Liederbach's deposition testimony that Benson had never demonstrated any such skills, R1-18-9 at 122-131, is not dispositive; Benson had the benefit, up until this point, of an administrative assistant. It therefore is unlikely that he would have had the opportunity or need to perform clerical functions from which Liederbach could have derived a negative view of his clerical skills.

Benson points also to the fact that after Joan Kanner resigned her post at Tocco three months subsequent to taking the job, Tocco hired Andy Huddleston as Personnel Supervisor. It is undisputed that Huddleston had no greater clerical or computer expertise than Benson at the time he was hired. Tocco correctly observes that availability of a job for which the plaintiff may be qualified eight months after an RIF is not proof that the same job existed at the time of the RIF. We note, however, that Tocco made no change in the requirements for personnel supervisor between the hiring of Kanner and Huddleston, yet Huddleston, who was hired to replace Kanner in the newly-restructured, consolidated position, had no more clerical skills than did Benson. This evidence, combined with both the statistical disparities in the rate of termination at Tocco and Tocco's apparent failure to investigate the possibility that Benson might have had the necessary skills to adapt to a restructured human resources position, gives rise to an inference of discrimination. In other words, Benson has presented at least enough evidence such that a reasonable factfinder could disbelieve Tocco's proffered reason for terminating his employment and, instead, infer that this reason was a pretext for age discrimination. We conclude that the ultimate question of whether Tocco was motivated by discriminatory animus in terminating Benson during the RIF is a question that must be presented to the jury. Accordingly, we reverse the district court's summary judgment with respect to Benson.

## III. CONCLUSION

Archambault, Dollar, Brown, and Benson allege that the defendants, Tocco and Park Ohio, targeted them for inclusion in a reduction in force based solely on their age. The district court found that the plaintiffs had failed to show that the employers' proffered reasons to justify termination were pretextual and granted summary judgment in favor of the defendants. We conclude that Archambault, Brown, and Benson have produced sufficient evidence to permit a rational trier of fact to infer that the defendants acted with discriminatory intent in choosing to discharge them. We reverse the district court's judgment as to Archambault, Brown, and Benson. We further determine that Dollar has not set forth enough evidence to demonstrate that the defendants' stated reasons for terminating him were a pretext for age discrimination. We affirm the district court as to Dollar. We

remand this case to the district court for a determination as to whether Park Ohio is a proper party to this action.

AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings consistent with this opinion.