PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
09/01/99
THOMAS  K. KAHN
CLERK

_____

No. 98-6690

_____

D.C. Docket No. CV 97-H-1134-NE


RAYMOND MITCHELL,

Plaintiff - Appellant,

versus

USBI COMPANY,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(September 1, 1999)**


Before TJOFLAT and DUBINA, Circuit Judges, and THRASH*, District Judge.

PER CURIAM:

_____
*Honorable Thomas W. Thrash, U.S. District Judge for the Northern District of Georgia, sitting
by designation.

Plaintiff Raymond Mitchell appeals the district court's grant of summary

judgment in favor of defendant USBI on his claim that USBI terminated his

employment because of his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. Mitchell contends that he stated a prima facie case of age discrimination and that he presented sufficient evidence for a reasonable jury to conclude that USBI's proffered reasons for terminating his employment were pretextual. For the reasons set forth below, we affirm the district court.

## I.  FACTS AND PROCEDURAL HISTORY

On July 21, 1981, Mitchell began working for USBI at its Huntsville, Alabama, facility. In 1985, Mitchell transferred to the Engineering Department, where he was classified as a "Senior Systems Engineer." His duties, which included updating certain documents, required some technical knowledge.

In 1991 and 1992, USBI laid off a total of 250 employees from its Huntsville workforce. In October 1993, USBI informed Don Reed, the head of the Engineering Department and the Vice President for Engineering, that he would have to eliminate 46 or 47 positions from the Engineering Department, because NASA had canceled a USBI program known as the "ASRB program." Because many Huntsville employees worked on ASRB projects on a part-time basis, the total number of Engineering Department layoffs represented a compilation of all

employee hours spent on ASRB projects. USBI's written layoff policy mandated that employees who worked on the ASRB program be laid off first.

Reed told his subordinates to prepare a department-wide list of potential layoff prospects. After compiling this list, the Engineering Department managers worked with the Human Resources Department to determine whether any of the layoff prospects were entitled to "bump" other employees. Under USBI's layoff policy, a more senior employee slated for layoff could bump a less senior employee in the same job classification or job family, if the more senior employee possessed the requisite qualifications to perform the less senior employee's job. The Engineering Department managers prepared a written justification for each decision to retain a less senior employee.

Mitchell's supervisor, Lou Trivett, submitted a list of nine or ten candidates for layoff to his boss, Phil Taylor. Mitchell was one of the layoff prospects, because Trivett and his two section chiefs determined that Mitchell's job functions would either be eliminated by the loss of the ASRB program or could be absorbed by other employees. USBI then determined that Mitchell did not possess the requisite qualifications to bump any of the 20 less senior employees who worked in his job classification or job family. Mitchell contends that he was qualified to fill at least some of those positions.

3

There is some dispute as to whether Mitchell's performance evaluations played a role in the bumping process. Ed Liverett, Mitchell's former supervisor, admits that he gave Mitchell lower performance evaluations in 1989, 1990, and 1991, because of Mitchell's age. Liverett explained that he gave higher performance evaluations to younger employees in order to increase their salaries and encourage them to remain with USBI. Liverett did not prepare Mitchell's 1992 performance evaluation, however, which was the last evaluation before the 1993 reduction-in-force. Although USBI eventually decided not to use the performance evaluations in assessing whether less senior employees should be "bumped," four of the justifications relating to Mitchell did mention some of his performance evaluations without identifying their dates.

On November 5, 1993, Mitchell and the other employees on the final list were informed of their terminations. At the time of his termination, Mitchell was 57 years old. After pursuing all three steps of the employee appeals process without success, Mitchell filed an EEOC charge alleging age discrimination. He then sued USBI, and the district court granted summary judgment against him.

## II.  STANDARD OF REVIEW

We review a grant of summary judgment <u>de</u> <u>novo</u>, applying the same standard as the district court. <u>See</u> <u>Standard v. A.B.E.L. Services, Inc.</u>, 161 F.3d

4

1318, 1326 (1998), reh'g and reh'g en banc denied, 172 F.3d 884 (11th Cir. 1999). Summary judgment is appropriate where, after viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See id.

### III. DISCUSSION

In order to state a prima facie case of age discrimination involving a reduction-in-force, a plaintiff must demonstrate that: (1) he was a member of the age group protected by the ADEA and was adversely affected by an employment decision; (2) he was qualified for his current position or to assume another position at the time of discharge; and (3) there is evidence from which a reasonable factfinder could conclude that the employer intended to discriminate on the basis of age in making its employment decision. See Benson v. Tocco, Inc., 113 F.3d 1203, 1208 (11th Cir. 1997). If the plaintiff satisfies this burden, the employer then must offer a legitimate, non-discriminatory reason for the employment action. See Maddow v. Procter & Gamble Co., Inc., 107 F.3d 846, 851 (11th Cir. 1997). If the employer does so, the plaintiff bears the ultimate burden of demonstrating that the employer's proffered reasons are a pretext for discrimination. See id.; Watkins v. Svedrup, 153 F.3d 1308, 1314 (11th Cir. 1998).

The district court assumed that Mitchell had presented a prima facie case of age discrimination, but ruled that he had failed to offer any evidence that USBI's legitimate, non-discriminatory reasons for its employment decision were pretextual. The court found that USBI had engaged in a detailed process of identifying candidates for layoff and explained why Mitchell could not replace 20 less senior employees, with each written justification citing his lack of specific qualifications. On appeal, Mitchell contends that the district court erred because he offered sufficient evidence for a reasonable factfinder to conclude that USBI's proffered reasons were pretextual. We address each of Mitchell's arguments in turn.

First, Mitchell argues that USBI's proffered reason for not allowing him to bump less senior employees -- that he was not qualified for any of their positions -- was pretextual, because several witnesses opined that he was qualified. None of these witnesses, however, were actual decision makers in the layoff process. Four were co-workers of Mitchell, and one was a former supervisor who stated only that Mitchell could have become qualified with proper training. This Court repeatedly has stated that it will not second-guess a company's legitimate assessment of whether an employee is qualified for a particular position. See Elrod v. Sears, Roebuck and Co., 939 F.2d 1466, 1470 (11th Cir. 1991) (noting that "[f]ederal

6

courts do not sit as a super-personnel department that reexamines an entity's business decisions" and that the key inquiry is "whether the employer gave an honest explanation of its behavior") (citations and internal quotations omitted); Smith v. Horner, 839 F.2d 1530, 1538 (11th Cir. 1988) ("If an employer selects the person it believes is best qualified, an argument of pretext ordinarily will fail.")(citations and internal quotations omitted).

Second, Mitchell argues that comments by various USBI employees demonstrate a corporate culture conducive to age discrimination. He cites a number of comments by a manager named Frank Batty, although he admits that Batty did not participate in the decision to terminate his employment. He also cites another manager's suggestion that the layoffs were aimed at the employees who were more secure and did not have young children in school, although he concedes that this manager also was not a decisionmaker. Nevertheless, Mitchell argues that, taken together, these comments constitute circumstantial evidence of discrimination. In several age discrimination cases, however, this court has explained that comments by non-decisionmakers do not raise an inference of discrimination, especially if those comments are ambiguous. See Standard, 161 F.3d at 1329-30 (statement by non-decisionmaker that "older people have more go wrong" was not probative of discriminatory intent); Mauter v. Hardy Corp., 825

7

F.2d 1554, 1558 (11th Cir. 1987) (statement by non-decisionmaker that "[t]he Hardy Corporation was going to weed out the old ones" did not raise a genuine issue of material fact regarding discriminatory intent); <u>Barnes v. Southwest Forest Industries, Inc.</u>, 814 F.2d 607, 610-11 (11th Cir. 1987) (statement by decisionmaker that employee could not pass a physical examination "at [his] age," when weighed against other evidence, did not raise issue of discriminatory intent).

Third, Mitchell argues that the district court erred in concluding that his performance evaluations did not play a role in the bumping process. Mitchell's former supervisor has admitted that he gave Mitchell lower performance evaluations for 1989, 1990, and 1991, because of Mitchell's age. Several of the written justifications refer to Mitchell's performance evaluations, although they do not specify the dates. Emphasizing the lack of specific dates and the testimony of Reed and others that they did not use the performance evaluations in the bumping process, the district court concluded that the tainted performance evaluations did not play a role in the bumping process. Viewing the evidence in the light most favorable to Mitchell, however, we must assume that some of the decisionmakers examined the tainted evaluations.

Nevertheless, we affirm the district court because the written justifications indicate that Mitchell lacked specific, objective qualifications for each potential

replacement position. Mitchell does not argue that he possessed these qualifications, and therefore he has failed to raise a genuine issue as to whether USBI's proffered reason for not allowing him to bump less senior employees -- his lack of qualifications -- was pretextual. See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 515, (1993) ("[A] reason cannot be proved to be 'a pretext *for discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason."); Clark v. Coats & Clark, Inc., 990 F.2d 1217, 1228 (11th Cir. 1993) ("The burden of proving pretext merges with the plaintiff's ultimate burden of proving that age was a determining factor in his discharge.").

Fourth, Mitchell argues that USBI failed to follow its stated policy of first laying off employees who worked on the ASRB program. Even assuming that USBI did deviate from its policy, this deviation does not raise an inference of discrimination. Standing alone, deviation from a company policy does not demonstrate discriminatory animus. See EEOC v. Texas Instruments Inc., 100 F.3d 1173, 1182 (5th Cir. 1996) (deviation from company policy not evidence of discrimination, absent a nexus between deviation and employee's protected status); Friedel v. City of Madison, 832 F.2d 965, 973 (7th Cir. 1987) (inaccurate application of departmental policy not enough to prove discrimination). See also Berg v. Florida Dep't of Labor and Employment Security, 163 F.3d 1251, 1255

(11ᵗʰ Cir. 1998) (plaintiff failed to support claim of ADA violation by arguing that state agency had failed to apply its policies correctly, absent showing that policies were misapplied because of his disability).

Finally, Mitchell argues that the district court relied too heavily on statistical evidence indicating that the reduction-in-force did not have a disparate impact on older employees.  While statistical evidence does play a larger role in disparate impact cases, this court has examined such evidence in disparate treatment cases as well.  See Watkins, 153 F.3d at 1314-15; Maddow, 107 F.3d at 852. Moreover, the district court also relied upon affidavits and other evidence relating to Mitchell's specific situation.

Thus, we conclude that Mitchell has failed to present sufficient evidence to rebut USBI's legitimate, non-discriminatory reasons for laying him off and not allowing him to bump any less senior employees.  Accordingly, we affirm the district court's grant of summary judgment in favor of USBI.

AFFIRMED.