[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-14023
Non-Argument Calendar
_____

D.C. Docket No. 8:10-cv-02916-SCB-AEP


NANCY M. KING,

Plaintiff-Appellant,

versus

CHUBB & SON,
a division of Federal Insurance Company,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(April 22, 2014)

Before CARNES, Chief Judge, TJOFLAT and FAY, Circuit Judges.

PER CURIAM:

Nancy King appeals the district court's grant of summary judgment to her former employer, Chubb & Son, on her claims of age discrimination and retaliation under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq.  She also appeals the district court's order striking some of her untimely evidentiary filings.

I.

King, a licensed Florida attorney, joined Chubb's Tampa office as a claims examiner in 2001 when she was 57 years old.[1]  Chubb provides underwriting and administrative support to a number of insurance companies.  And King handled insurance claims originating in Chubb's specialty unit, a part of the company devoted to professional and business insurance.  In spring of 2008, Chubb rolled out a new operating model for the specialty unit according to which "low complexity" claims would be transferred from Chubb's regional offices, including King's Tampa office, to a service center in Simsbury, Connecticut.  The regional offices would then concentrate on medium to high complexity claims.

The reduction in the number of claims handled by the regional offices meant that they would need fewer claims examiners, and Chubb planned to cut ten of the fifteen examiner positions from its "southern zone."  That included King's Tampa

---

[1] We review de novo a district court's grant of summary judgment, viewing the evidence in the light most favorable to the nonmoving party, see Castleberry v. Goldome Credit Corp., 408 F.3d 773, 785 (11th Cir. 2005), so these facts are presented in the light most favorable to King.

office as well as an office in Dallas, Texas.[2]  Five of the ten positions were to be terminated in a first phase of cuts, carried out in August of 2008, while the other five would be terminated in a second phase carried out later that fall.  To decide which ten claims examiners to let go, Chubb's managers audited a random selection of the examiners' files and assessed their ability to handle medium to high complexity claims.  The assessment looked at five criteria:

1. Coverage: does the claim examiner use knowledge of the business and intellectual rigor to determine coverage provided;

2. Investigation: does the examiner develop and execute upon an appropriate action plan for investigation of both liability and damages using Specialty Best Practices guidelines including obtaining documents and information;

3. Negotiation and Settlement: does the examiner effectively evaluate potential exposure based on objective criteria to support position, including pursuit of parties with culpability and directly negotiating within value ranges;

4. Case Management: does the examiner clearly outline and document the file in a timely and accurate manner in the following areas: (1) liability and damage issues and analysis; (2) how coverage applies to their liability and damages analysis; and (3) proactive development and execution of an effective claim strategy; and

5. Communication and Service: does the examiner properly and actively communicate with internal and external customers and facilitate the retention and acquisition of accounts.

---

[2] These figures reflect the number of claims examiner positions that were filled at the time Chubb instituted the new operating model.  Chubb also eliminated three unfilled claims examiner positions from the southern zone, bringing the total number of positions that were eliminated, counting both filled and unfilled jobs, to thirteen.

When evaluating the examiners against those criteria, the auditors scored them on a scale of 1 to 5, with 5 being the best, and provided a written explanation for each of the scores.  To help ensure that the scores were objective, someone other than the examiners' direct supervisors assessed their files.  Natalie Plumlee evaluated King's work, which at the time consisted primarily of low complexity files, and assigned her scores of 1.0, 1.5, 1.5, 1.5, and 1.0 for each of the five criteria, respectively.  Judith Sammarco, Chubb's Senior Vice President of Human Resources, then averaged those scores and combined the average with King's performance evaluation scores from 2005 and 2006.  The skills assessment counted for 70% of the total combined score while the 2005–2006 evaluations counted for 30%.  The end result was that King received a score of 1.87.

Sammarco ranked the fifteen examiners' scores from highest to lowest to determine which five employees would be cut first.  King's score was tied for the third lowest, with the other scores in the bottom five being 1.82, 1.86, 1.87, and 1.97.  King and the four other lowest-scoring examiners were let go on August 1, 2008.  Three of the terminated claims examiners were younger than King, and two of those three were under the age of 40.  King was told of other available positions within the company, but she did not apply for them.  At no point did King tell Chubb that she or other employees were being discriminated against on the basis of their age.

4

In 2010, King sued Chubb for age discrimination and retaliation under the ADEA. The district court set the cutoff for discovery as February 2012 and the deadline for dispositive motions as March 2012, but King requested and received a number of extensions, ultimately pushing those dates back to November 2012 and December 2012, respectively. Chubb timely filed its motion for summary judgment within the December 2012 deadline, after which King requested additional time to respond — a request that the court consented to with the warning that "[n]o further extensions will be granted."

King filed her response on January 14, 2013, the deadline given by the district court. But King apparently suffered some technical difficulties and did not file any evidentiary materials in support of her response until the next day, January 15, when she filed hundreds of pages of exhibits. Three days after the deadline, on January 17, King filed additional exhibits, and the next day, January 18, she filed even more. King never sought the district court's leave to make those three late filings.

On January 29, Chubb moved to strike King's untimely evidentiary filings, a motion that the district court denied in part and granted in part. Admitting the January 15 filings, the district court found that King's delay in submitting them was excusable because she had faced technical difficulties. Striking the January 17 and 18 filings, however, the court found that King had "not provided a sufficient

5

explanation that the technical difficulties she encountered [on January 14] remained unresolved for several days after the deadline passed."

The district court granted Chubb's motion for summary judgment on both King's discrimination and retaliation claims.  King now appeals the district court's order striking the January 17 and 18 evidentiary filings, as well as its grant of summary judgment to Chubb.

## II.

We review a district court's ruling on a motion to strike untimely evidentiary filings for abuse of discretion.  See Benson v. Tocco, Inc., 113 F.3d 1203, 1208 (11th Cir. 1997).  As long as the district court has not committed a clear error of judgment, we will affirm its ruling.  See Young v. City of Palm Bay, Fla., 358 F.3d 859, 863 (11th Cir. 2004).  Because King filed her evidence after the deadline set by the court's scheduling order, she had to show "good cause" under Federal Rule of Civil Procedure 16(b) in order for those filings to be admitted.  See Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1312 (11th Cir. 2009).  There can be no good cause where the record shows that the late-filing party "lacked diligence in pursuing its claim."  S. Grouts & Mortars, Inc. v. 3M Co., 575 F.3d 1235, 1241 (11th Cir. 2009).

King contends that the district court should have admitted the exhibits she filed on January 17 and 18 because her failure to timely file was due to the same

6

technical difficulties that prevented her from filing on January 14.  The district court found that those technical difficulties explained why she filed exhibits on January 15, but did not justify the two and three day delay for the other filings. The district court concluded that those January 17 and 18 filings must have been due to a lack of diligence by King, and we cannot say that it abused its discretion in reaching that conclusion.  King's lack of diligence resolves the issue decisively in Chubb's favor.  See Sosa v. Airprint Sys., Inc., 133 F.3d 1417, 1418 (11th Cir. 1998) ("If a party was not diligent, the good cause inquiry should end.") (brackets and quotation marks omitted).

### III. Grant of Summary Judgment

We review de novo a district court's grant of summary judgment, viewing the evidence in the light most favorable to the nonmoving party.  Castleberry v. Goldome Credit Corp., 408 F.3d 773, 785 (11th Cir. 2005).  Summary judgment is appropriate if the record evidence shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

The ADEA prohibits an employer from discriminating against an employee who is 40 years old or older because of the employee's age.  See 29 U.S.C. §§ 623(a), 631(a).  It also prohibits an employer from retaliating against an employee who engages in ADEA-protected activities.  See id. § 623(d).  We

7

evaluate discrimination claims based on circumstantial evidence, such as King's, under a version of the burden-shifting test set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973). See Damon v. Fleming Supermarkets of Florida, Inc., 196 F.3d 1354, 1358 (11th Cir. 1999). We apply a similar burden-shifting test to retaliation claims too. See Pennington v. City of Huntsville, 261 F.3d 1262, 1266 (11th Cir. 2001). Under those tests, an employee must first establish a prima facie case of discrimination or retaliation, at which point the employer is given an opportunity to offer nondiscriminatory or non-retaliatory reasons for the adverse actions it took against the employee. See Damon, 196 F.3d at 1359–61; Pennington, 261 F.3d at 1266. The employee then bears the ultimate burden of proving that those reasons are a pretext for discrimination or retaliation. See Damon, 196 F.3d at 1361; Pennington, 261 F.3d at 1266.

Setting aside the question whether King established a prima facie case of discrimination or retaliation, Chubb offered the following reasons for its adverse action against her: Chubb rolled out a new operating model under which low complexity claims would be transferred from its regional offices to its Connecticut service center; after that transfer the regional offices would focus on medium to high complexity claims which meant that the southern zone would need ten fewer claims examiners; to determine which five people were best able to handle medium to high complexity claims, Chubb's supervisors evaluated a random selection of

the files of King and the fourteen other claims examiners in the southern zone; King received one of the five lowest scores in that assessment, and as a result of that low score, Chubb fired her and the four other lowest-scoring employees, two of whom were under the age of 40, in the first phase of cuts; and in the second phase of cuts Chubb eliminated the five employees with the next lowest scores.

Even assuming that King can establish prima facie cases of discrimination and retaliation, she has not shown that Chubb's reasons for its actions are pretextual. Making that showing requires King to demonstrate both: (1) that Chubb's stated nondiscriminatory reasons were false; and (2) that discrimination was the real reason for the adverse employment action. See Brooks v. Cnty. Comm'n of Jefferson Cnty., 446 F.3d 1160, 1163 (11th Cir. 2006). King has demonstrated neither. Her conclusory allegations — that Chubb set her up for termination by classifying her work as low complexity and that Chubb manipulated its evaluation process to target her — are not sufficient. See Young v. Gen. Foods Corp., 840 F.2d 825, 830 (11th Cir. 1988) ("Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where an employer has offered extensive evidence of legitimate, non-discriminatory reasons for its actions.") (brackets and quotation marks omitted). Those allegations find no support in the record. We therefore

9

affirm the district court's grant of summary judgment to Chubb on King's age discrimination and retaliation claims.

**AFFIRMED.**