[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-12816

Non-Argument Calendar

_____

JOHN DOE,
JANE DOE,
as parents and natural guardians of R.V., a minor,

Plaintiffs-Appellants.

*versus*

MAGICAL CRUISE COMPANY LTD,
d.b.a. Disney Cruise Line,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:21-cv-01566-RBD-RMN

_____

Before JORDAN, LAGOA, and MARCUS, Circuit Judges.

PER CURIAM:

John and Jane Doe ("the Does"), proceeding *pro se*, appeal from the district court's order granting summary judgment in favor of Magical Cruise Company, Ltd. ("Disney Cruise Lines" or "DCL") in a negligence action the Does brought in federal court. The basis for the complaint is the Does' claim that their three-year-old daughter, R.V., was sexually assaulted by a seven-year-old girl while the two children were at a childcare facility aboard DCL's vessel. In opposing DCL's motion for summary judgment, the Does pinpointed in video footage from the ship the six-second interval when they said the assault occurred; notably, they did not claim that the assault occurred off-camera. The district court reviewed the summary judgment record, including the video footage, and concluded that no reasonable jury could find that a sexual assault had occurred. After careful review, we affirm.

I.

The relevant facts -- as gleaned from the summary judgment record -- are these. In January 2020, John and Jane Doe were on vacation on DCL's cruise ship with their three-year-old daughter, R.V.; her seventeen-year-old half-brother, A.M.; and A.M.'s

girlfriend. On the afternoon of January 9, the Does dropped off R.V. -- wearing a dress with legging shorts underneath -- at DCL's childcare facility.

Closed-circuit television ("CCTV") footage recorded R.V.'s movements throughout the facility that day. About 40 minutes after she was dropped off, R.V. is seen going into the bathroom and emerging a few minutes later being guided by a seven-year-old girl in a Princess Leia costume ("P.L"). P.L. takes R.V. to a staff member, who appears to comfort R.V. Later, when Jane Doe came to pick R.V. up, P.L. explained that she had found R.V. crying in the bathroom and that's why she brought R.V. to the employee.

The video next shows R.V. and P.L. lying on what look like beanbags in the daycare's media lounge. P.L. is cradling R.V. while they look forward, apparently watching television. Other children are in the room at all times, and an older child can be seen patting and trying to comfort R.V.; DCL employees are also in and out of the room, talking to the children. During the critical interval in the video -- identified by the Does as when R.V. was sexually assaulted -- P.L.'s right hand is draped around R.V., occasionally resting on R.V.'s abdomen or her doll, with P.L.'s left hand propping herself up on her elbow. About ten minutes later, the two leave to find another employee whom P.L. seemingly asks to comfort R.V. The employee picks R.V. up and holds her until Jane Doe arrives.

R.V. did not immediately report any kind of assault to anyone. A day later, her mother saw blistering and redness near R.V.'s genitals when R.V. complained of pain, but her mother thought

R.V.'s swimsuit was too tight.  Then, over a month after the cruise, R.V. told her father that her brother A.M. touched her private parts "all the time."  R.V.'s mother did not believe her, but her father (A.M.'s stepfather) did.  The family went to the police, who investigated alongside the Department of Children and Families.

When interviewed, R.V. was asked if A.M. had touched her private parts, and she said she did not want to answer.  After further questioning, R.V. indicated that A.M. had touched her genitals when they were on an airplane in the bathroom.  A.M. ultimately was not charged and moved out of the house soon after.

In the aftermath of the A.M. investigation and based on various snippets R.V. told them, the Does pieced together their belief that R.V. had been assaulted on the ship.  At first, the Does thought R.V. was assaulted by a ship employee with the same name as her sibling, which they later decided was not the case.  After viewing the video of the DCL childcare facility from January 9, 2020, they deduced that P.L. had assaulted R.V. -- though R.V. never expressly said that P.L. had touched her private parts -- during a window between 6:27:11 and 6:28:30 p.m.  Law enforcement also viewed the video but concluded that no sexual assault had occurred.

Thereafter, the Does sued DCL in the United States District Court for the Middle District of Florida.  They brought several negligence claims, alleging that DCL had, in essence, failed to protect R.V. from being sexually assaulted.  Specifically, they alleged that R.V. "was physically restrained and sexually assaulted" by P.L. "[w]hile in the Lab Media Lounge of the Youth Club."

Before the close of discovery, DCL filed an early motion for summary judgment.  It argued that because the cruise ship's CCTV footage conclusively established that R.V. was not sexually assaulted in the childcare facility, the Does had failed to allege a harm that DCL could have prevented.  At a hearing, the district court viewed the video and indicated that it had not seen anything suspicious, but nevertheless gave the Does the opportunity to complete discovery to gather additional evidence to support their claims.

Following the close of discovery, DCL renewed its motion for summary judgment, arguing again that the CCTV footage showed no assault.  The Does, in response, maintained that the CCTV footage did show an assault: specifically, they said that P.L.'s "right hand made contact with R.V.'s thighs, groin, pelvis, and belly" in a way that was "inappropriate" and "sexual in nature," and that this "sexual assault occurred between 6:27:11-6:28:30 on January 9, 2020," as captured by the CCTV footage.  The parties both proffered expert testimony in support of their arguments, and both moved to strike the other's expert testimony under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993).

The district court granted summary judgment to DCL.  It explained that its "exhaustive, frame-by-frame review of the video footage" did not show a sexual assault; rather, it showed only "innocent and normal casual touching and comforting between children."  Thus, "[w]ith no evidence of sexual assault by P.L. in [DCL]'s daycare," the court found that the Does "cannot succeed on their claims that [DCL] was negligent in failing to protect their

daughter."  Upon granting summary judgment to DCL, the court also denied the parties' *Daubert* motions as moot, and entered judgment in favor of DCL.

The Does, without counsel for the first time, filed a motion for reconsideration.  They argued, also for the first time, that R.V. had been sexually assaulted in the bathroom, and so the court's finding that the CCTV footage showed no assault did not entirely dispose of the case.  The court denied the motion, explaining that reconsideration is not proper to assess new arguments that were previously available but not pressed, as this one was.

The Does timely appealed, and proceed on appeal *pro se*.

II.

We review a grant of summary judgment *de novo*, applying the same legal standards as the district court.  *Penley v. Eslinger*, 605 F.3d 843, 848 (11th Cir. 2010).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  We view the record, and all its inferences, in the light most favorable to the nonmoving party, *Benson v. Tocco, Inc.*, 113 F.3d 1203, 1207 (11th Cir. 1997), though we will not accept facts that are "blatantly contradicted by the record, so that no reasonable jury could believe [them]," *Scott v. Harris*, 550 U.S. 372, 380 (2007).  "If a reasonable jury could not find in favor of the nonmoving party, no genuine issue of material fact does exist; and summary judgment is proper." *Young v. City of Palm Bay*, 358 F.3d 859, 860 (11th Cir. 2004).

To plead a negligence claim under maritime law,[1] a plaintiff must show that: "(1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012). The alleged injury here was a sexual assault, so the Does must provide enough evidence for a reasonable jury to conclude that R.V. was sexually assaulted. *See Levine v. Cent. Fla. Med. Affiliates, Inc.*, 72 F.3d 1538, 1556 (11th Cir. 1996) (holding that summary judgment is warranted where the plaintiff "has failed to establish a genuine issue of material fact as to [the] necessary elements of" his claim).

We review the denial of a motion for reconsideration for abuse of discretion. *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 957 (11th Cir. 2009).

### III.

First, we are unpersuaded by the Does' argument that there remains a question of material fact as to whether the CCTV footage shows P.L. sexually assaulting R.V. In summary-judgment cases "where a video in evidence 'obviously contradicts [the non-movant's] version of the facts, we accept the video's depiction instead of [the nonmovant's] account.'" *Shaw v. City of Selma*, 884

---

[1] Federal maritime law applies to the substantive legal issues because the alleged torts occurred on navigable waters. *See Everett v. Carnival Cruise Lines, Inc.*, 912 F.2d 1355, 1358 (11th Cir. 1990).

F.3d 1093, 1098 (11th Cir. 2018) (quoting *Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1315 (11th Cir. 2010)).  We still construe all ambiguities in video footage in favor of the plaintiff, as we would with written pleadings, but where video footage is "clear and obviously contradicts the plaintiff's alleged facts, we accept the video's depiction instead of the complaint's account and view the facts in the light depicted by the video." *Baker v. City of Madison*, 67 F.4th 1268, 1277 (11th Cir. 2023) (internal citations omitted).

In this case, no reasonable juror could find that the CCTV footage from DCL's ship shows a sexual assault.  The video shows two girls, three years old and seven years old, lying on cushions in a media room, with the older girl cradling the younger girl -- whom the seven year old had found upset in the bathroom and was trying to calm -- as they look forward, watching television.  Between 6:27:11 and 6:28:30 p.m, when the Does claim the assault occurred, P.L.'s hand is resting on R.V.'s abdomen, but the video shows nothing sinister about this positioning.  The video does not show P.L.'s hand go under R.V.'s dress or the leggings underneath, nor touch R.V.'s genitals.  At most, P.L.'s hand can be seen briefly going under R.V.'s body to scoot them higher onto the beanbag, then the two children fidget before P.L. frees her hand to pat R.V.'s doll and arm, where P.L.'s hand remains.  Further, no other child in the room, including two older ones who are within a foot of the two girls at the relevant time, reacts as if something were amiss about P.L. and R.V.'s interactions.

Because there is no ambiguity in the CCTV footage before us that could suggest that a sexual assault was occurring, the case cited by the Does, *Mueller v. Swift*, 2017 WL 236213 (D. Colo. May 31, 2017), is inapposite. There, a photograph -- taken from the front -- could not conclusively show whether the defendant had grabbed the plaintiff's buttocks. *Id.* at *3, *6. Here, the approximate position of P.L.'s hand is always visible -- even if its exact position is sometimes fuzzy -- resting against R.V.'s body as the two children are lying next to each other. It cannot be construed as being "in between R.V.'s thighs," which are stacked on top of each other while R.V. lays on her side, as the Does argued in their opposition to the motion for summary judgment.

The Does also claim that "[a] question of fact exists" about whether "the video itself depicts an assault" because the district court failed to consider "R.V. breaking free from P.L." or "R.V. running away from P.L." and "R.V. plopping to the floor to retreat from P.L.'s authority." But none of these allegations are allegations of sexual assault. Indeed, even accepting that three-year-old R.V. was breaking free or running away from P.L., that would not create a genuine dispute of material fact about whether a sexual assault had occurred.

As for the Does' argument that the district court erred in not considering their experts' testimony, they misinterpret the district court's treatment of this issue. The court did not say that the expert testimony itself was moot; it denied the parties' *Daubert* hearings as moot because it concluded that there was no dispute of

material fact regardless of what the experts had to say. As we've long recognized, expert testimony is not required "to clarify facts and issues of common understanding which jurors are able to comprehend for themselves." *Hibiscus Assocs. Ltd. v. Bd. of Tr. of Policemen & Firemen Ret. Sys. of Detroit*, 50 F.3d 908, 917 (11th Cir. 1995). Video testimony is often self-explanatory; as we've held before, a district court ruling on summary judgment has the discretion to exclude expert testimony that is unnecessary to interpret a video -- that is, where a jury would "not need [an expert] to tell them what they could plainly see for themselves." *Prosper v. Martin*, 989 F.3d 1242, 1250 (11th Cir. 2021).

The district court here was perfectly capable of watching the video and deciding for itself whether the video showed a sexual assault; it did not need expert testimony to inform that conclusion. It's also worth noting that neither of the Does' experts testified in their depositions that the video showed a sexual assault. Rather, they testified that the footage was unclear. Thus, the district court did not err in granting DCL's motion for summary judgment based on its own conclusion that the undisputed evidence in the record -- including the CCTV footage -- did not depict a sexual assault.

## IV.

Nor are we persuaded by the Does' claim that the district court abused its discretion by denying their motion for reconsideration. In its order, the district court explained that it would not consider the new argument the Does were attempting to raise on reconsideration -- that R.V. was in fact assaulted off-camera in the

bathroom, rather than (or in addition to) the alleged assault shown in the CCTV footage of the media room -- because reconsideration is not an appropriate time to raise "new arguments that were previously available, but not pressed." The district court observed that the Does had not come forward with any newly discovered evidence on reconsideration nor had they sought to correct any clear errors. Instead, now acting *pro se* after their counsel withdrew, they pressed a theory that they (guided by counsel) had made the decision not to advance earlier. Their attempt, the court emphasized -- to relitigate the case on grounds that were previously available -- was not a valid basis for reconsideration.

The district court acted well within its discretion in declining to consider the Does' new argument on reconsideration. We have squarely held that "[a] motion for reconsideration cannot be used to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment," and "[t]his prohibition includes new arguments that were previously available, but not pressed." *Wilchombe*, 555 F.3d at 957 (quotation marks and citations omitted). For similar reasons, our Court typically declines to consider "an issue not raised in the district court and raised for the first time in an appeal." *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) (quotation marks and citation omitted). As we've explained, if either our Court or the district court were to entertain these past-due arguments, it would amount to a waste of judicial resources and prevent the finality necessary to the judicial process. *See id.*; *see also Lussier v. Dugger*, 904 F.2d 661, 667 (11th Cir. 1990) ("A busy district court need not allow itself

to be imposed upon by the presentation of theories seriatim." (citation omitted)).

Here, the Does made their claim clear in their amended complaint, their briefings, and their argument before the district court: they were alleging that the sexual assault occurred in the ship's media lounge and the assault was captured on the CCTV footage. In their amended complaint, they alleged that R.V. "was physically restrained and sexually assaulted" "[w]hile in the Lab Media Lounge of the Youth Club." In their opposition to DCL's motion for summary judgment, they stated that it was "[u]ndisputed that the subject sexual assault occurred between 6:27:11-6:28:30 on January 9, 2020," during which time R.V. was in the media lounge -- and they reiterated that the assault occurred "in particular from 6:27:12–6:27:18 p.m." At the hearing on DCL's first motion for summary judgment, plaintiffs' counsel said that the CCTV footage "evidences the actual sexual assault that we are claiming against the defendant." They never amended their complaint a second time to assert that R.V. was also sexually assaulted in the bathroom; nor did they ever suggest as much in any brief or at any hearing before the district court. This led the district court, in its order granting DCL's motion for summary judgment, to emphasize that "Plaintiffs assert solely that the video shows the sexual assault occurring between 6:27:11 and 6:28:30 p.m. -- specifically, in the six seconds from 6:27:12 to 6:27:18 p.m.; they do not argue that R.V. was assaulted in any other portion of the video or off-camera."

In their motion for reconsideration, plaintiffs argued that they "did report that [R.V.] was assaulted in the bathroom," but they did not cite to any of their briefing to the court. As we've recognized, "a ground not pressed in the district court in opposition to a motion for summary judgment is to be treated by the district court as abandoned." *Road Sprinkler Fitters Loc. Union No. 669 v. Indep. Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994) (citing *Lazzara v. Howard A. Esser, Inc.*, 802 F.2d 260, 269 (7th Cir. 1986)). The fact that there is evidence in the record that *could* support alternative arguments -- which they say could be found in the deposition transcripts of Jane Doe and a therapist -- does not suffice. The district court cannot be expected to "distill every potential argument that could be made based upon the materials before it on summary judgment" -- "[r]ather, the onus . . . to formulate arguments" is on the parties. *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc).

The Does, in their reply brief, point to a single sentence in their opposition to DCL's motion for summary judgment, which says: "On May 10, 2021, R.V. reported to her therapist that she does not use the bathroom alone because of what happened on the cruise." But, notably, this passing reference to R.V. not using the bathroom alone does not constitute an argument that R.V. was assaulted in the bathroom on the cruise ship.

It is true that we construe *pro se* plaintiffs' arguments liberally. *Campbell v. Air Jam. Ltd.*, 760 F.3d 1165, 1168–69 (11th Cir. 2014). But even if we were to somehow read their summary

judgment briefing as encompassing their new take on the case -- and we cannot do so on this record -- their reliance on their *pro se* status is unwarranted.  While the Does were *pro se* in their motion for reconsideration and are *pro se* on appeal, they were represented by legal counsel throughout the district court process, from the initial filing of their complaint up until the court's grant of summary judgment.  Thus, as the district court noted, their abandonment of any argument that R.V. was assaulted in the bathroom was a decision made with the advice of counsel, not a decision by a *pro se* plaintiff.  The Does "had every opportunity to raise the new theory in district court, whether in their initial complaint or in an effort to amend their complaint." *Access Now, Inc.*, 385 F.3d at 1331.  But they did not do so.  The Does therefore abandoned the argument that R.V. was assaulted in the bathroom.

In short, the Does alleged exclusively that R.V. was sexually assaulted in the media room of DCL's daycare facility, but the CCTV footage conclusively shows that no sexual assault occurred there.  Without raising any genuine issue of material fact about whether R.V. was sexually assaulted, the Does have no basis on which to sue DCL for negligently failing to protect her.  The district court did not err in granting summary judgment to DCL.

**AFFIRMED.**