[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Sept. 25, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-15739
Non-Argument Calendar

_____

D. C. Docket No. 06-03081-CV-JEC-1

JERRY GODBY,

                                              Plaintiff-Appellant,

versus

MARSH USA, INC.,

                                              Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(September 25, 2009)

Before DUBINA, Chief Judge, TJOFLAT and EDMONDSON, Circuit Judges.

PER CURIAM:

Jerry Godby appeals the grant of summary judgment in favor of his former employer, Marsh USA, Inc., on his retaliation claim brought pursuant to Title VII, 42 U.S.C. § 2000e-3(a), and 42 U.S.C. § 1981. No reversible error has been shown; we affirm.

Godby, a white male, was employed with Marsh as a facilities manager from March 2000 until his termination in late 2004. His job duties included overseeing the mailroom. He alleged that Paul Lazar, an office administrator (who, in part, oversaw the facilities functions) treated black employees in a discriminatory manner.[1] In the fall of 2004, mailroom employees were prohibited from working overtime. But Lazar allowed Justin Mackey, the only white employee in the mailroom, to work overtime while the other mailroom employees were prohibited from doing so. In September 2004, Godby spoke to Lazar about this perceived disparate treatment and stated that he would report Lazar if he continued to witness it. According to Godby, Lazar became angry and told Godby that he would not "be around long enough to see it or report it." In November 2004, Marsh terminated Godby as part of a company-wide reduction in forces ("RIF"). Godby alleged that Marsh terminated him in retaliation for opposing Lazar's unlawful

---

[1]Lazar was Godby's immediate supervisor from August to December 2000.

employment practices.

The district court concluded that Godby had not made a prima facie case of retaliation because (1) he could not objectively have believed that Mackey's receipt of overtime demonstrated discriminatory animus by Lazar given that Mackey's main job duties were with the finance department and (2) he showed no causal connection between his complaint to Lazar and his termination because Lazar was not the ultimate decisionmaker. And even if Godby had made a prima facie case of retaliation, the district court concluded, he did not demonstrate pretext for Marsh's legitimate, non-retaliatory reason for terminating him as part of the cost-cutting RIF.

On appeal, Godby argues that he established a prima facie case of retaliation.[2] We review a district court's grant of summary judgment de novo; and we view the evidence and all reasonable factual inferences in the light most favorable to the nonmoving party. Maniccia v. Brown, 171 F.3d 1364, 1367 (11th Cir. 1999).

To establish a prima facie case of retaliation under Title VII, Godby had to show that (1) he engaged in statutorily protected expression, (2) he suffered an

---

[2]Godby abandoned his state law claims of intentional infliction of emotional distress and slander by raising no arguments about these claims on appeal. See Denney v. City of Albany, 247 F.3d 1172, 1182 (11th Cir. 2001) (explaining that issues not briefed on appeal are abandoned).

3

adverse employment act, and (3) some causal connection existed between the two events.  Pennington v. City of Huntsville, 261 F.3d 1262, 1266 (11th Cir. 2001).[3]

About the third part, Godby had to show (1) that the decisionmakers were aware of the protected conduct and (2) that the protected activity and the adverse act were not wholly unrelated.  Shannon v. Bellsouth Telecomm., Inc., 292 F.3d 712, 716 (11th Cir. 2002) (quotation and citation omitted).

We conclude that Godby failed to demonstrate a causal connection between any statutorily protected activity and adverse employment act because Marsh did not know about Godby's complaint to Lazar when it terminated him.[4] Godby was terminated pursuant to a company-wide RIF.  Marsh's parent company coordinated this RIF and provided regional managers with targets and factors to consider in selecting employees for the RIF.  Steve Poncsak, a former Marsh regional adviser, communicated the RIF guidelines to the managers -- including Lazar -- in the offices he oversaw and asked these managers to provide him with a list of names

---

[3]Because this case is a circumstantial evidence case, the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 93 S.Ct. 1817 (1973), applies.  While Godby contends that Lazar's comment that Godby would not "be around long enough to see it or report it" is direct evidence of discrimination, Lazar's comment was not blatantly discriminatory and could be subject to more than one interpretation.  See Scott v. Suncoast Beverage Sales, Ltd., 295 F.3d 1223, 1227-28 (11th Cir. 2002) (only the most blatant remarks, the intent of which could be nothing other than to discriminate on the basis of the protected classification, constitute direct evidence of discrimination).

[4]That Godby's termination constituted an adverse employment act is undisputed.  And we assume without deciding that Godby engaged in statutorily protected expression because the third part -- the causal connection -- is dispositive in this case.

4

for the RIF. Lazar submitted Godby's name, but Poncsak actually terminated Godby. And Godby admitted that he never told Poncsak about his complaint to Lazar. He also produced no evidence that those persons involved with approving Poncsak's decision were aware of Godby's complaints.

No discriminatory animus by Lazar can be imputed to Poncsak, the ultimate decision-maker in terminating Godby, because the decision to terminate him independently was reviewed. While Godby asserts that Poncsak merely rubber-stamped Lazar's suggestion, the record shows that Poncsak reviewed all the names he received and ensured that each met the RIF requirements. And every selection for the RIF was vetted by a local human resources person, a member of the RIF coordinator's staff, and a member of the legal department. This vetting team examined how and why employees were selected, what criteria were used, and whether there was a legitimate reason for the person's termination. This independent review removed any discriminatory taint by Lazar from the decision to terminate Godby. See Llampallas v. Mini-Circuits, Lab, Inc., 163 F.3d 1236, 1249 (11th Cir. 1998) (under a cat's paw theory of causation, a non-decisionmaking employee's discriminatory animus may be imputed to a neutral decisionmaker only when the decisionmaker has not independently investigated allegations of misconduct); Pennington, 261 F.3d at 1270 (where a decisionmaker

conducts his own evaluation and makes an independent decision, the decision is "free of the taint of a biased subordinate employee").

Even if we were to assume arguendo that Godby established a prima facie case, the district court order is due to be affirmed:  it rested on the alternative ground that Marsh offered legitimate, non-retaliatory reasons for terminating Godby that were not pretextual.  Marsh terminated Godby as part of a company-wide RIF to compensate for reduced earnings.  Godby was chosen for the RIF because his salary was higher than other facilities employees doing similar work and his additional responsibilities could be handled by another employee.  These reasons were consistent with the goals of the RIF, which included reducing overall fixed expenses and eliminating positions where employees performed the same or similar duties.

Godby argues that his job duties were not redundant, but the pretext inquiry "centers upon the employer's beliefs, and not the employee's own perceptions of his performance."  See Holifield v. Reno, 115 F.3d 1555, 1565 (11th Cir. 1997). To the extent Godby argues that other employees would have been more appropriate choices for the RIF or takes issue with the vetting process itself, we do not second-guess the business judgment of employers.  See Combs v. Plantation Patterns, 106 F.3d 1519, 1543 (11th Cir. 1997) (plaintiff cannot establish pretext

merely by questioning the wisdom of the employer's reasons where the reason is one that might motivate a reasonable employer).  Godby has not otherwise shown that Marsh's proffered reasons were false and that a retaliatory motive was the real reason for his termination.  See Brooks v. County Comm'n of Jefferson County, Ala., 446 F.3d 1160, 1163 (11th Cir. 2006).

The elements required to establish retaliation claims under section 1981 are the same as those required for Title VII claims.  See Goldsmith v. Bagby Elevator Co., Inc., 513 F.3d 1261, 1277 (11th Cir. 2008).  So, because Godby's Title VII retaliation claim fails, so does his section 1981 claim.[5]

AFFIRMED.

---

[5]The district court dismissed Godby's section 1981 claim before summary judgment proceedings began.  Godby later sought reconsideration of this dismissal after the decision in CBOCS West, Inc. v. Humphries, 128 S.Ct. 1951 (2008), which Godby argued showed that a white person could bring a retaliation claim under section 1981.  But Humphries had no bearing on this case because Godby did not meet the elements of retaliation under Title VII; and the district court committed no error in denying reconsideration.