James R. MARGOLIS, M.D., Plaintiff,

v.

PUBLIC HEALTH TRUST OF MIAMI–DADE COUNTY d/b/a Jackson Health Systems, & Martha Garcia, Defendants.

Case No. 14–21416–CIV.

United States District Court,
S.D. Florida,
Miami Division.

Signed Feb. 26, 2015.

Filed Feb. 27, 2015.

Dana T. Chang, Spencer Hal Silverglate, Clarke Silverglate, P.A., Miami, FL, for Plaintiff.

Marlon Delano Moffett, Miami, FL, for Defendants.

## ORDER GRANTING DEFENDANTS' JOINT MOTION FOR FINAL SUMMARY JUDGMENT

JOSE E. MARTINEZ, District Judge.

THIS CAUSE came before the Court upon Defendants' Joint Motion for Final Summary Judgment [ECF No. 61]. Defendants Public Health Trust of Miami–Dade County d/b/a Jackson Health Systems ("Jackson") and Martha Garcia ("Garcia") (collectively, "Defendants") move for entry of final summary judgment in their favor against Plaintiff James Margolis, M.D. ("Plaintiff"). For the reasons set forth below, this Court grants Defendants' Joint Motion for Final Summary Judgment [ECF No. 61].

### I. Relevant Background

This is an action for damages based on allegations of employment discrimination brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e ("Title VII"), the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 ("ADEA"), the Florida Civil Rights Act, Fla. Stat. §§ 760.01 ("FCRA"), and the Equal Protection Clause of the United States Constitution through 42 U.S.C. § 1983. [ECF No. 18] (the "Amended Complaint"). Specifically, Plaintiff alleges that Jackson discriminated against him by terminating his employment as the Medical Director of the Cardiac Cath Lab ("Cath Lab") at Jackson South Community Hospital ("Jackson South") because of his age (69) and race (white, non-Hispanic) in violation of the ADEA, FCRA, and Title VII (Counts I, II, III, and IV). *Id.* Plaintiff further alleges

that Garcia, the Senior Vice President and Chief Administrative Officer of Jackson South, recommended that Jackson terminate his employment because of his race and/or national origin, in violation of 42 U.S.C. § 1983 (Count V), and that this recommendation was "solely motivated by discriminatory animus." *Id.* at ¶¶ 4, 15.

Defendant Public Health Trust is an agency of Miami–Dade County which operates the Jackson Health System. [ECF No. 62 at ¶ 1; ECF No. 74 at ¶ 1]. Jackson is composed of several facilities, including Jackson Memorial Hospital ("JMH" or "Jackson Main Campus"), Jackson North Medical Center ("Jackson North"), and Jackson South. *Id.* Plaintiff is a white, non-Hispanic male, born in 1943. [ECF No. 62 at ¶ 2; ECF No. 74 at ¶ 2]. On October 18, 2010, he began his employment as the Medical Director assigned to Jackson South on an unpaid, voluntary basis, with the primary duty of developing and implementing the business plan to establish a new cardiac catheterization lab ("CCL") at Jackson South. [ECF No. 62 at ¶ 3; ECF No. 74 at ¶ 3]. Plaintiff began working in a paid capacity effective February 7, 2011, with a starting annual salary of $500,000.00 plus benefits. [ECF No. 62 at ¶ 4; ECF No. 74 at ¶ 4]. As medical director, Plaintiff was an at-will employee at all times subject to being removed from his position at the discretion of the Vice President and Director of Jackson Medical Group/Physician Services ("JMG"), which employs physicians throughout the health system. [ECF No. 62 at ¶¶ 1, 5; ECF No. 74 at ¶¶ 1, 5]

From September 6, 2011 to December 2012, Garcia was employed as Senior Vice President and Chief Administrative Officer for Jackson South. *Id.* at ¶ 6. Garcia was responsible "for the 'day-to-day operations of all services, developing new product lines and services, [and] managing the physical budget for [Jackson South].' Making sure that [Jackson South] complied with all state and federal regulatory agencies, physician relationships, serving as a liaison ... between the doctors and the health care system." [ECF No. 62–6 at 4 (Garcia Dep. at 11:22–12:4)]. Plaintiff alleges that Garcia was his *de facto* supervisor. [ECF No. 74 at ¶ 41]. Defendants submit that from approximately March 2012 to August 2013, Gino Santorio ("Santorio") was responsible for all JMG employed physicians throughout Jackson, including Plaintiff. [ECF No. 62 at ¶ 8] (citing ECF No. 62–7 at ¶¶ 1–2).

In approximately March of 2012, Jackson executives initiated one in a series of large-scale reductions-in-force ("RIFs"), and required Santorio to develop a plan to reduce his workforce. [ECF No. 62 at ¶ 11]. Plaintiff was aware of the 2012 RIFs, as they resulted in his having to take unpaid furlough days. *Id.* at ¶ 12; [ECF No. 74 at ¶ 12]. Plaintiff also acknowledged that he was being asked to take furlough days because the hospital was running out of money and they " 'were down to a few days of cash flow and they needed to pay less money to the people in general.' " [ECF No. 62 at ¶ 12] (quoting ECF No. 62–1 at 43 (Margolis Dep. at 167:24–168:2)). On April 4, 2012, Santorio sent Plaintiff a letter informing him that his position as a Medical Director was being eliminated and that he would be permanently laid off effective May 14, 2012. [ECF No. 62–8] ("April Layoff Letter"). The letter further explained that, "[o]ver the next few months the organization [would be] proceeding with management/personnel reductions, resulting in the permanent loss of approximately Nine Hundred and Twenty (920) positions." *Id.* Thereafter, on May 4, 2012, Santorio sent a superseding termination letter, advising Plaintiff that his termination would become effective on June 1, 2012. [ECF No.

62–9] ("May Layoff Letter"). The May Layoff Letter also reiterated the point that the organization would be proceeding with management/personnel reductions, resulting "in the permanent loss of approximately Nine Hundred and Twenty (920) positions." *Id.*

Prior to Plaintiff's termination, Jackson had three CCLs, with Dr. Alexandre Ferreira ("Dr. Ferreira") serving as Medical Director of Cardiology at Jackson Main Campus (earning $489,249.28 per year), Dr. Cesar Mendoza serving as Medical Director of Cardiac Imaging (earning $360,499.36 per year), and Plaintiff serving as the Medical Director of the Cath Lab at Jackson South (earning $514,999.68 per year). [ECF No. 62 at ¶ 11]. After eliminating Plaintiffs position in May 2012, Dr. Ferreira assumed oversight of all three CCLs throughout Jackson. *Id.* Then, in October 2012, Dr. Zambrano was hired as an Associate Medical Director for the Cath Lab at Jackson South (earning approximately $425,000 per year). *Id.* Plaintiff alleges that he was treated less favorably than Drs. Ferreira, Mendoza, and Zambrano, three similarly situated employees who are Hispanic and younger than him. *Id.* at ¶ 28. While Plaintiff maintains that board certification in interventional cardiology is not a prerequisite for employment for any medical director or associate medical director in cardiology position [ECF No. 74 at ¶ 45], the parties do not dispute the fact that "all three alleged comparators were board certified in interventional cardiology." *Id.* at ¶ 29. By contrast, Plaintiff's certification in interventional cardiology lapsed in 2010. [ECF No. 62–1 at 16 (Margolis Dep. at 58:4–8) ]. Nonetheless, Plaintiff claims that he "was replaced by Drs. Ferreira and Zambrano despite Plaintiff being more qualified than his replacements." [ECF No. 62 at ¶ 34] (quoting ECF No. 62–1 at 41–42 (Margolis Dep. at 159:8–162:3; 163:24–164:9)); [ECF No. 74 at ¶ 34].

As set forth in the Amended Complaint, Plaintiff alleges that at or around March 2012, Garcia recommended that Jackson terminate his employment because he was not " 'the appropriate candidate to lead [the] lab' because he [was] 'winding down his career.' " [ECF No. 74 at ¶ 83] (quoting ECF No. 74–8 at 2). Moreover, Plaintiff alleges that Garcia has a " 'pattern of discriminating against Non–Hispanic employees,' stating that Non–Hispanics have been 'almost completely eliminated *in the cardiovascular area* at least.' " [ECF No. 62 at ¶ 27] (quoting ECF No. 62–1 at 37) (Margolis Dep. at 145:11–16). In support of these allegations, Plaintiff references "age-based comments" Jackson made regarding his employment, "when it told Dr. Margolis' patient that he 'retired' ... and sent letters to Dr. Margolis' patients stating that he is 'pursuing other interests.' " [ECF No. 74 at ¶ 86] (quoting ECF No. 74–16 at ¶¶ 4, 6; ECF No. 74–15 at 3).

On or about April 8, 2014, Plaintiff filed suit against Jackson alone in the Circuit Court of the Eleventh Judicial Circuit in and for Miami–Dade County, Florida, to address the alleged deprivation of rights secured by Title VII, the ADEA, and the FCRA. [ECF No. 1–1 at 4]. Jackson duly filed a Notice of Removal on April 21, 2014, pursuant to 28 U.S.C. §§ 1441 and 1446, removing the action to the United States District Court for the Southern District of Florida. [ECF No. 1]. Plaintiff's Amended Complaint filed on or about June 20, 2014 added Garcia as a defendant to the lawsuit, alleging deprivation of constitutional rights pursuant to 42 U.S.C. § 1983 as a result of Garcia's willful, malicious, and deliberate discrimination against Plaintiff based on his race and/or national origin. [ECF No. 18 at ¶ 41]. Alterna-

tively, Plaintiff claims Garcia willfully, maliciously, and deliberately *caused* Jackson to discriminate against him based on his race and/or national origin. *Id.* at ¶ 41. As to all counts, Plaintiff requests a money judgment against Jackson representing compensatory damages, back pay, front pay, lost benefits, mental anguish, and emotional distress, together with costs and reasonable attorneys' fees. *Id.* at 7. As to Garcia, Plaintiff also requests compensatory damages, including but not limited to, damages for personal humiliation, mental anguish and emotional distress, punitive damages, costs and reasonable attorneys' fees. *Id.* at 8. Defendants seek summary judgment as to all counts of the Amended Complaint on the basis that Plaintiff can neither establish a *prima facie* case of age or race discrimination, nor overcome the legitimate, non-discriminatory explanations for Plaintiff's layoff with evidence of pretext. *See* [ECF No. 61]. Also, Defendants argue that Plaintiff is not entitled to punitive damages against Garcia. *Id.* at 13.

## II. Legal Standards

### A. Summary Judgment Standard

Pursuant to Fed.R.Civ.P. 56(a), "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there will be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). An issue of fact is

"genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co.,* 475 U.S. at 586, 106 S.Ct. 1348. It is "material" if it might affect the outcome of the case under the governing law. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. In addition, when considering a motion for summary judgment, the Court is required to view the evidence in the light most favorable to the non-moving party. *Id.* at 255, 106 S.Ct. 2505.

If the moving party bears the burden of proof at trial, the moving party must establish all essential elements of the claim or defense in order to obtain summary judgment. *See U.S. v. Four Parcels of Real Prop. in Greene & Tuscaloosa Counties,* 941 F.2d 1428, 1438 (11th Cir.1991). The moving party " 'must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial.' " *Id.* (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (Brennan, J., dissenting)). "If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, 'come[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact.' " *Four Parcels,* 941 F.2d at 1438 (quoting *Chanel, Inc. v. Italian Activewear of Fla., Inc.,* 931 F.2d 1472, 1477 (11th Cir.1991)).

By contrast, if the non-moving party bears the burden of proof at trial, the moving party may obtain summary judgment simply by establishing the nonexistence of a genuine issue of material fact as to any essential element of a non-moving party's claim or affirmative defense. *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. When the non-moving party bears the burden of proof, the moving party does not

have to "support its motion with affidavits or other similar material *negating* the opponent's claim." *Id.* at 323, 106 S.Ct. 2548. The moving party may discharge its burden in this situation by showing the Court that "there is an absence of evidence to support the nonmoving party's case." *Id.* at 324, 106 S.Ct. 2548. Once the moving party discharges its initial burden, a nonmoving party who bears the burden of proof must cite "to particular parts of materials in the record" or show "that the materials cited do not establish the absence or presence of a genuine dispute." Fed.R.Civ.P. 56(c)(1).

### B. *Prima Facie* Case of Age Discrimination Under the ADEA and FCRA

 Under the ADEA, it is unlawful for an employer "to discharge any individual ... because of such individual's age[.]" 29 U.S.C. § 623(a)(1). The FCRA also makes it unlawful for an employer to discharge any individual because of such individual's age. Fla. Stat. § 760.10(1)(a). To establish a *prima facie* case of age discrimination under the ADEA and the FCRA,[1] the plaintiff must demonstrate that "he (1) was a member of the protected age group, (2) was subject to adverse employment action, (3) was qualified to do the job, ... and (4) was replaced by a younger individual." *Benson v. Tocco, Inc.*, 113 F.3d 1203, 1207–08 (11th Cir.1997) (internal citations omitted). These criteria are altered slightly in RIF cases, where a position is eliminated in its entirety. *Id.* at

1208. Where, as here, the employer produces evidence that it discharged the plaintiff during a RIF, the plaintiff establishes a *prima facie* case of age discrimination by demonstrating that "(1) he was in a protected age group; (2) he was adversely affected by an employment decision; (3) he was qualified for his current position or to assume another position at the time of discharge, and (4) the evidence could lead a factfinder reasonably to conclude that the employer intended to discriminate on the basis of age." *Mitchell v. City of LaFayette*, 504 Fed.Appx. 867, 870 (11th Cir.2013); *see also Benson*, 113 F.3d at 1208. If a case involves a RIF, "the court should not apply mechanistically the traditional *prima facie* age discrimination test, namely the element that the employer 'replaced' plaintiff with an individual under forty years of age." *Watkins v. Sverdrup Tech., Inc.*, 153 F.3d 1308, 1314 (11th Cir. 1998) (citing *McCorstin v. U.S. Steel Corp.*, 621 F.2d 749, 752–54 (5th Cir.1980)).[2]

### C. *Prima Facie* Case of Race Discrimination Under Title VII, the FCRA and Section 1983

 In addition to his age discrimination claims, Plaintiff also pleads causes of action for race and national origin discrimination against Jackson under Title VII and the FCRA, and against Garcia under the United States Constitution/Equal Protection Clause pursuant to 42 U.S.C. § 1983. The analysis of disparate treatment claims brought under Section 1983 apply the same standards of proof and analytical

---

1. Because the FCRA is modeled after Title VII as well as the ADEA, "[f]ederal case law interpreting Title VII and the ADEA is applicable to cases arising under the FCRA." *Reilly v. Novartis Pharm. Corp.*, No. 6:07–cv–230–Orl–19GJK, 2008 WL 795322, at *3 (M.D.Fla. March 24, 2008) (citing *Jones v. United Space Alliance, LLC*, 494 F.3d 1306, 1310 (11th Cir. 2007)).

2. In *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

framework utilized in claims brought under Title VII where the claims rely upon the same facts. *Crawford v. Carroll,* 529 F.3d 961, 970 (11th Cir.2008); *Cross v. State of Ala., State Dept. of Mental Health & Mental Retardation,* 49 F.3d 1490, 1508 (11th Cir.1995). Title VII and the FCRA make it unlawful for an employer to discharge any individual because of such individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2(a)(1); Fla. Stat. § 760.10(1)(a). Under Section 1983, a person acting under color of state law may not violate a constitutional right. *Holmes v. Crosby,* 418 F.3d 1256, 1258 (11th Cir.2005). To make out a *prima facie* case of racial discrimination under Title VII and Section 1983, a plaintiff must show that he (1) belongs to a protected class, (2) was qualified for the job, (3) suffered adverse employment action, and (4) similarly situated employees outside his class were treated more favorably by his employer. *Crawford,* 529 F.3d at 970. Similar to RIF cases under the ADEA, in Title VII cases involving discharge as part of a RIF, a plaintiff may establish a *prima facie* case of race discrimination by

> (1) showing that he was a member of a protected group and was adversely affected by an employment decision; (2) proving that he was qualified for his own position or to assume another position at the time of the discharge; and (3) producing sufficient evidence from which a rational fact finder could conclude that his employer intended to discriminate him in making the discharge decision.

*Standard v. A.B.E.L. Servs., Inc.,* 161 F.3d 1318, 1331 (11th Cir.1998) (citing *Benson,* 113 F.3d at 1208).

## D. Three–Part Burden–Shifting Paradigm

In reviewing a claim of employment discrimination, the courts of this Circuit have routinely applied the burden-shifting analysis established by *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this framework, the plaintiff has the initial burden of establishing a *prima facie* case of discrimination. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. If plaintiff successfully establishes a *prima facie* case for either age or race discrimination, this creates a rebuttable presumption that the employer acted illegally and discriminated against the employee. *Gray v. City of Jacksonville, Fla.,* 492 Fed.Appx. 1, 3–4 (11th Cir. 2012) (quoting *Wilson v. B/E Aerospace, Inc.,* 376 F.3d 1079, 1087 (11th Cir.2004)). The effect of the presumption shifts the burden of production to the employer. *Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir.1997). The employer may rebut the presumption of discrimination by introducing evidence of " 'some legitimate, nondiscriminatory reason' for its employment decision." *Kidd v. Mando American Corp.,* 731 F.3d 1196, 1202 (11th Cir.2013) (quoting *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817). "[T]o satisfy this intermediate burden, the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had *not* been motivated by discriminatory animus." *Combs,* 106 F.3d at 1528 (quoting *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254–55, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (alteration in original). "[T]he employer's 'burden is production not persuasion ... The ultimate burden of persuasion remains at all times with plaintiff.' " *Watkins v. Sverdrup Tech., Inc.,* 153 F.3d 1308, 1314 (11th Cir.1998) (quoting *Eastland v. Tenn. Valley Auth.,* 704 F.2d 613, 619 (11th Cir.), *modified in part on reh'g on other grounds,* 714 F.2d 1066 (11th Cir.1983), *cert. denied,* 465 U.S. 1066, 104 S.Ct. 1415, 79 L.Ed.2d 741 (1984)). "If the employer

satisfies its burden, 'the presumption raised by the prima facie case is rebutted' " and the plaintiff has the opportunity to discredit the employer's proffered explanation for its decision. *Kidd*, 731 F.3d at 1202 (quoting *Collado v. United Parcel Serv. Co.*, 419 F.3d 1143, 1151 (11th Cir. 2005)). The burden of production then shifts back to the plaintiff to offer evidence that the seemingly legitimate reason given by the employer is merely a pretext for illegal discrimination. *Paul v. Americold Logistics, LLC*, 450 Fed.Appx. 850, 853 (11th Cir.2012) (citing *McDonnell Douglas*, 411 U.S. at 802–04, 93 S.Ct. 1817)).

In order to show pretext, the plaintiff must show *both* that the employer's explanation was false, and that discrimination was the real reason for his decision. *Brooks v. Cnty. Com.'n of Jefferson Cnty., Ala.*, 446 F.3d 1160, 1163 (11th Cir.2006) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). The plaintiff may succeed in this either directly, by persuading the court that a discriminatory reason more likely motivated the employer, or indirectly, by showing that the employer's proffered explanation is unworthy of credence. *Dulaney v. Miami–Dade Cnty.*, 481 Fed.Appx. 486, 489 (11th Cir.2012) (quoting *Burdine*, 450 U.S. at 256, 101 S.Ct. 1089). In doing so, a plaintiff can point to " 'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the proffered explanation[,]' " however the employee cannot succeed by simply quarreling with the wisdom of that reason. *Id.* (quoting *Brooks*, 446 F.3d at 1163). Indeed, "a plaintiff must show not merely that the defendant's employment decisions were mistaken, but that they

were in fact motivated by discriminatory animus." *Id.* (citing *Wilson*, 376 F.3d at 1092). Ultimately, an " 'employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason.' " *Id.* (quoting *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984)). The defendant is entitled to summary judgment if the plaintiff fails to proffer sufficient evidence to create a genuine issue of material fact as to whether the defendant's proffered reason is pretextual. *Id.* (citing *Chapman v. AI Transp.*, 229 F.3d 1012, 1024–1025 (11th Cir.2000)).

## III. Analysis

### A. Age Discrimination Claims Against Jackson (Counts I and II)

■ Defendants argue that Plaintiff cannot establish a *prima facie* case of age discrimination based on his layoff because the record contains no evidence to establish the last prong: that Jackson intended to discriminate on the basis of age. [ECF No. 61 at 4]. In support of this argument, Defendants submit that "a plaintiff must prove that age was the 'but-for' cause of the adverse employment action in order to prevail on a disparate treatment claim under the ADEA." *Id.* at 3 (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009)). Further, Defendants cite to *Mitchell*[3] to demonstrate that " '[i]n order to satisfy the last prong, the plaintiff must produce some evidence that the employer did not treat him neutrally with respect to his age, but, instead, discriminated based upon it.' " [ECF No. 61 at 3] (quoting *Mitchell*, 504 Fed.Appx. at 870) (citations omitted). Ul-

---

3. Plaintiff takes issue with Defendants' reliance upon an unpublished and nonbinding opinion. [ECF No. 49 at 12]. It is well established, however, that "[a]lthough an un-

published opinion is not binding … it is persuasive authority." *U.S. v. Futrell*, 209 F.3d 1286, 1290 (11th Cir.2000) (per curiam).

timately, Defendants argue that "[b]ecause there is *no* evidence that age played *any* role in the elimination of Plaintiff's position, Plaintiff fails to show that age was the 'but-for' cause of Plaintiff's termination." *Id.* at 4 (citing *Mitchell,* 504 Fed. Appx. at 872) (affirming summary judgment in favor of the City where Plaintiff "failed to show that they would not have been selected for inclusion in the RIF but for their age."). In response, Plaintiff argues that under both the traditional test and the variant applicable to RIF cases, Plaintiff establishes a *prima facie* case of age discrimination. [ECF No. 49 at 9]. Assuming, without deciding, that Plaintiff does establish a *prima facie* case of age discrimination pursuant to both tests, Defendants have articulated a legitimate, non-discriminatory reason for Plaintiff's termination and the Court finds no evidence of pretext to rebut Defendants' explanations for Plaintiff's layoff, namely, that Jackson was compelled to terminate his position during a massive RIF in order to reduce costs. Plaintiff presents no evidence to suggest that a discriminatory reason more likely motivated Jackson. Additionally, Plaintiff provides no reason for this Court to deem Jackson's proffered explanation either false or unworthy of credence. *See Dulaney,* 481 Fed.Appx. at 489.

■ In an employment discrimination action under the ADEA or the FCRA, the employer may rebut the presumption of discrimination created by the plaintiff's establishment of a *prima facie* case "by articulating at least one legitimate, non-discriminatory reason for its action." *Mitchell,* 504 Fed.Appx. at 870 (citing *Watkins,* 153 F.3d at 1314). "Eliminating a position to avoid an unnecessary expenditure may be a legitimate, nondiscriminatory reason for an employment decision." *Id.* (citing *Tidwell v. Carter Prods.,* 135 F.3d 1422, 1426 (11th Cir.1998)) ("Carter proffered its RIF as a legitimate, nondiscriminatory reason for terminating Tidwell, eliminating the presumption of discrimination."). The parties herein do not dispute that Jackson underwent a large-scale reduction in force in 2012 to achieve financial stability. [ECF No. 62 at ¶ 11]; [ECF No. 62–1 at 43 (Margolis Dep. at 167:24–168:11)]. As Plaintiff admitted, "the hospital was running out of money and they ... needed to pay less money to the people in general." [ECF No. 62–1 at 43 (Margolis Dep. at 167:25–168:2)]. Although Plaintiff characterizes the RIF as "an excuse to get rid of Dr. Margolis[,]" there is no evidence to support this blanket assertion, especially where Plaintiff received the highest salary out of all the other medical directors doing similar or more work. [ECF No. 62 at ¶ 11]. Rather, "[i]n reorganizing Cardiology, Santorio ... made the non-discriminatory decision to eliminate the position of the *highest paid* medical director assigned to a CCL." [ECF No. 63 at 8] (citing *Godby v. Marsh USA, Inc.,* 346 Fed.Appx. 491, 494 (11th Cir.2009)) (termination of employee whose salary was higher than other facilities employees doing similar work and his additional responsibilities could be handled by another employee was consistent with the goals of the RIF).

■ Furthermore, Jackson argues that "numerous other physicians outside of Plaintiff's protected classes were *laid off,* and that numerous other physicians within Plaintiff's protected classes were *retained.*" [ECF No. 61 at 7]. Indeed, "[o]f the hundreds of employees laid off between 2010 and the present, [Jackson] *terminated* at least thirty-three (33) physicians, five (5) of whom were Hispanic, thirteen (13) of whom were Non–White, and twenty-eight (28) of whom were younger than Plaintiff." [ECF No. 62 at ¶ 24]

(citations omitted). Moreover, hundreds of physicians at Jackson who are white, non-Hispanic, and/or over the age of 40, like Plaintiff, retained their positions after the May 2012 RIF. *Id.* at ¶ 25. "These retentions include[d] at least 118 physicians, twenty-nine (29) of whom were Non–Hispanic, forty-nine (49) of whom were White, over one hundred (115) of whom were over the age of 40. There were even eleven (11) physicians *retained* that were *older* than Plaintiff." *Id.* (citations omitted). Where the purpose of the RIF was to conserve and reallocate resources, this Court finds Jackson's inclusion of Plaintiff therein nothing more than " 'a business decision, and the ADEA is not a vehicle for reviewing the propriety of business decisions.' " *Watkins,* 153 F.3d at 1317 (quoting *Furr v. Seagate Tech., Inc.,* 82 F.3d 980, 986 (10th Cir. 1996)). Furthermore, "the wisdom of a RIF is not for a court or jury to decide." *Furr,* 82 F.3d at 986.

■ To support the argument that Jackson's proffered reasons for terminating Plaintiff's employment are pretextual, Plaintiff raises several points. First, Plaintiff submits that Jackson's shifting explanations for its decision to terminate his employment are proof of pretext. [ECF No. 49 at 14]. However, Jackson has consistently maintained that it eliminated Plaintiff's position as part of a mass RIF. *See* [ECF No. 62–8, 62–9]. As part of this argument, Plaintiff references Defendants' assertions "that Dr. Margolis violated the time and attendance policy by not requesting planned absences in advance" as well as his failure "to fulfill his responsibility for ensuring that the [Cath Lab] was adequately covered. . . ." [ECF No. 49 at 17]. Notwithstanding, these alleged performance problems do not invalidate the RIF as the reason for termination. As Defendants point out, "[c]ourts in the Eleventh Circuit . . . have repeatedly held that the existence of performance problems [do] not negate a RIF as a legitimate, nondiscriminatory reason for termination." [ECF No. 63 at 8] (citing *Tidwell v. Carter Prods.,* 135 F.3d 1422, 1428 (11th Cir.1998) (employer's testimony was not inconsistent where "[a]t most, the jury could find that performance was an additional, but undisclosed, reason for the decision; the existence of a possible additional non-discriminatory basis for Tidwell's termination does not, however, prove pretext.") (additional citations omitted)). Second, Plaintiff argues that Drs. Ferreira and Zambrano are less qualified for the position as medical director of a CCL, having significantly less experience in interventional cardiology and teaching than Plaintiff. [ECF No. 49 at 15]. However, Plaintiff's perception of his own performance, abilities, or aptitude is irrelevant. *Mitchell,* 504 Fed.Appx. at 871 ("The inquiry into pretext centers upon the employer's beliefs, and not the employee's own perceptions of his performance." ') (quoting *Holifield v. Reno,* 115 F.3d 1555, 1565 (11th Cir.1997)). Third, because Jackson hired six new medical directors and associate medical directors in the cardiology department, all of whom were outside of at least one of Plaintiff's protected classes, he argues that Jackson did not save money on salaries in connection with the cardiology department. [ECF No. 49 at 16]. However, this Court will "not sit as a super-personnel department that reexamines an entity's business decisions." *Alphin v. Sears, Roebuck & Co.,* 940 F.2d 1497, 1501 (11th Cir.1991) (internal quotations omitted). Jackson's business judgment—its decision to restructure the medical directors in the cardiology department and hire new doctors—does not concern this Court. "Our real interest lies in whether [Plaintiff] produced sufficient evidence to demonstrate an actual intent on

the part of [Defendants] to discriminate on the basis of age." *Id.* at 1501–02.

■ Finally, Plaintiff alleges that Defendants made age-based comments evincing discriminatory intent. [ECF No. 49 at 17]. Specifically, Garcia's remark in an e-mail dated April 4, 2012 that Plaintiff was "[w]inding down his career[;]" the statement of an unnamed scheduling receptionist who told one patient that Plaintiff "retired[;]" and correspondence sent out by Jackson to Plaintiff's patients explaining that Plaintiff was "taking this opportunity to pursue other interests." [ECF No. 74–8 at 2; ECF No. 74–16 at ¶ 4; ECF No. 74–15 at 3]. As Defendants argue in their reply, however, these comments are not evidence of discrimination or malice. [ECF No. 63 at 3]. Indeed, in the light most favorable to Plaintiff, these comments are "simply too vague to prove even generalized discriminatory animus." *Standard*, 161 F.3d at 1329. In deposition, Garcia provided context to her statement by explaining as follows:

Q. By winding down his career you meant you thought he was near retirement?

A. No.

Q. What do you mean by winding down his career?

A. Just not engaged, not taking ownership.

Q. When you say not taking ownership what do you mean?

A. He would not resolve the serious issues we had with patient care related to cardiology in the cath lab.

[ECF No. 62–6 at 10 (Margolis Dep. 34:10–18) ]. Furthermore, the receptionist was not involved in the decision to terminate Plaintiff and Jackson's correspondence did not even mention or infer age as a reason why Plaintiff could no longer attend to his patients as a part of the Jackson Medical Group. [ECF No. 74–15 at 3].

Accordingly, even if Plaintiff had established a *prima facie* case of age discrimination, he nonetheless fails to present sufficient evidence tending to show that Jackson's proffered reason for his termination was a pretext for age discrimination. *See Watkins*, 153 F.3d at 1314. Plaintiff fails to meet head on and rebut Jackson's legitimate, non-discriminatory explanation for his layoff, namely, that Jackson's financial situation required a large-scale RIF. *See Brooks*, 446 F.3d at 1163. Further, Plaintiff fails to show that he would not have been selected for inclusion in the RIF but for his age. *See Gross*, 557 U.S. at 177–78, 129 S.Ct. 2343. Indeed, even when viewing the evidence in the light most favorable to Plaintiff, he fails to demonstrate that the specific reason given by Jackson for his termination was pretext for age discrimination. This Court is not tasked with determining whether Jackson terminated Plaintiff for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, so long as Jackson did not act out of discriminatory animus. *Dulaney*, 481 Fed.Appx. at 490 (quoting *Nix*, 738 F.2d at 1187). Additionally, Plaintiff has not convinced the Court that Jackson's proffered reasons were not the true reason for his termination, rendering summary judgment appropriate as to Counts I and II of the Amended Complaint [ECF No. 18 at 5–6].

### B. Race Discrimination Claims Against Jackson (Counts III and IV) and Garcia (Count V)

In addition to his ADEA claims, Plaintiff also asserts claims of race discrimination against Jackson under Title VII, and against Garcia under 42 U.S.C. § 1983/

Equal Protection Clause.[4] As with Plaintiff's claims for age discrimination, assuming, without deciding, that he can establish a *prima facie* case of race discrimination, Defendants have articulated a legitimate, non-discriminatory reason for Plaintiff's termination and the Court finds no evidence of pretext to rebut Defendants' explanations for Plaintiff's layoff. In an attempt to demonstrate that Defendants' reasons are pretextual, Plaintiff relies on the same arguments he submits in support of his age discrimination claims. [ECF No. 49 at 14–18]. Furthermore, Plaintiff provides no *additional* evidence of pretext to support such a finding against Garcia. The Court has already considered these arguments, and still finds Defendants' given reason for terminating Plaintiff's employment legitimate, non-discriminatory, and non-pretextual. *See supra* Section III(A). Therefore, as with Counts I and II, summary judgment is appropriate as to Counts III, IV, and V.

## C. Punitive Damages Against Garcia

Because the Court finds summary judgment appropriate as to all counts of the Complaint, Plaintiff is not entitled to punitive damages against Garcia. Damages in cases of intentional discrimination in employment are governed by 42 U.S.C. § 1981a. Pursuant to Section 1981a(b)(1), "[a] complaining party may recover punitive damages ... if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." " 'Malice means an intent to harm and recklessness means serious disregard for the consequences of [one's] ac-

tions.' " *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1281 (11th Cir. 2008) (quoting *Ferrill v. Parker Group, Inc.*, 168 F.3d 468, 476 (11th Cir.1999)) (internal quotations omitted) (alteration in original). Plaintiff has failed to demonstrate that Garcia engaged in a discriminatory practice, much less malice or reckless indifference to his federally protected rights. Accordingly, Plaintiff is not entitled to punitive damages against Garcia.

## IV. Conclusion

After careful review of the record, including deposition testimony cited to by the parties in their relevant filings, the Court finds that no genuine issues of material fact exist in this matter. Accordingly, for the reasons stated herein, it is hereby

**ORDERED AND ADJUDGED** that:

1. Defendants' Joint Motion for Final Summary Judgment [ECF No. 61] is **GRANTED.**

2. Final judgment shall be entered by separate order.

3. This case is **CLOSED,** and all pending motions are **DENIED AS MOOT.**

---

**4.** As previously explained, the analysis of disparate treatment claims under Title VII and the Equal Protection Clause are identical

when the facts on which the claims rely, as here, are the same. *Crawford,* 529 F.3d at 970.